**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| **PEOPLE OF GUAM,** | **Criminal Case No. CF0412-22** |
| | GPD Report No. 22-15904 |
| v. | |
| | **DECISION AND ORDER** |
| **RICO MANUEL TAITANO MANTANONA** | **DENYING** |
| (*aka* **RICO TAITANO MANTANONA**), | **DEFENDANT'S MOTION** |
| DOB: 09/16/1992 | **TO SUPPRESS EVIDENCE** |
| | |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena, III on December 20, 2023 for hearing on Rico Manuel Taitano Mantanona's (*aka* Rico Taitano Mantanona's) ("Defendant's") Motion to Suppress Evidence ("Motion"). Assistant Attorney General Gloria Rudolph represents the People, and Alternate Public Defender Theresa Dunphy represents Defendant. Having duly considered the parties' briefs, oral arguments, and the applicable law, the Court now issues the following Decision and Order and **DENIES** Defendant's Motion.

## BACKGROUND

On June 15, 2022, Defendant was arrested and charged with Possession of a Concealed Firearm Without a Valid Firearm ID Permitting Concealed Carry (as a 3rd Degree Felony). See Indictment (Jul. 5, 2022).

The incident happened when GPD Officers Pewtress and Wolford conducted a traffic stop of Defendant at the Agana Shopping Center. Officer Pewtress initiated the stop after witnessing: (1) an illegible rear license plate on Defendant's vehicle, and (2) Defendant fail to obey a stop sign. See Court Recording at 2:19:00pm-2:19:30pm (Dec. 20, 2023). During the traffic stop, Defendant verbally consented to Officer Pewtress searching his vehicle. Id. at 2:31:00pm. Upon searching the vehicle's center console, Officer Pewtress found a black Sig Sauer P320 9mm pistol with a loaded

Decision and Order Denying Defendant's Motion to Suppress Evidence
CF0412-22, *People of Guam v. Rico Mantanona*
Page 1 of 5

magazine. Id. at 2:32:00pm. Although Defendant possessed a Guam Firearms Identification Card, he did not have concealed-carry status. Id. at 2:33:00pm-2:34:45pm.

On January 23, 2023, Defendant filed his Motion to Suppress Evidence. Defendant seeks suppression of all evidence resulting from the traffic stop, including the GPD Officer's observations, Defendant's statements, and the seized firearm. See Motion at 1 (Jan. 23, 2023). Defendant claims the traffic stop was an illegal seizure, and that he involuntarily consented to Officer Pewtress's searching of his vehicle under the belief that he had no other choice. Id. at 4-5.

On February 6, 2023, the People filed their Opposition to Motion ("Opposition"). The People argued the initial traffic stop was justified by traffic and vehicle equipment violations. See Opposition at 2 (Feb. 6, 2023). The People also argued Defendant's consent to Officer Pewtress's searching of his vehicle was voluntary under the circumstances. Id. at 3-4.

On February 8, 2023, Defendant filed his Reply to Opposition ("Reply"). Defendant argued the stop was improperly prolonged when he consented, making the evidence obtained inadmissible. See Reply at 1-2 (Feb. 8, 2023). Defendant also argued his consent was not voluntary because it resulted from Officer Pewtress's improper intimidation of Defendant. Id. at 2.

The Court held a hearing on December 20, 2023. After hearing the arguments of the parties, the Court took the matter under advisement.

## DISCUSSION

### I. Preliminary Rules:

The Fourth Amendment provides that people should be free from unreasonable searches and seizures. See U.S. Const. amend. IV. Evidence obtained from a Fourth Amendment violation is inadmissible. See Terry v. Ohio, 392 U.S. 1, at 12 (1968). This includes "not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" See Segura v. U.S., 468 U.S. 796 at 796-797 (1984) (internal citations omitted).

### II. GPD's seizure and arrest of Defendant was constitutional, because the Officers had probable cause to believe Defendant had committed unlawful activity.

Decision and Order Denying Defendant's Motion to Suppress Evidence
CF0412-22, *People of Guam v. Rico Mantanona*
Page 2 of 5

Seizures can take the form of both investigative stops and formal arrests, as in either situation a reasonable person would not feel able to decline the Officer's requests or otherwise immediately terminate such encounters. See *People v. Chargualaf*, 2001 Guam 1 ¶ 17. For investigative stops, police may briefly detain someone if they have a reasonable suspicion of unlawful activity. See *Terry v. Ohio*, 392 U.S. 1, at 10 (1968). For formal arrests, police must have "probable cause to believe that the suspect has committed a crime". Id. at 10. Both "reasonable suspicion" and "probable cause" are judged by a totality of the circumstances, and those beliefs must be based on "specific reasonable inferences" supported by articulable facts rather than merely inadequate guesswork. Id. at 27.

Here, GPD Officers had reasonable suspicion of Defendant's unlawful activity justifying their initial investigative stop of Defendant. GPD Officers Pewtress and Wolford testified that they witnessed Defendant unlawfully drive through a stop sign without stopping. See Court Recording at 2:22:00pm, 2:58:30pm (Dec. 20, 2023). Officer Pewtress also testified that he was unable to read Defendant's rear license plate due to a tinted license plate cover, suggesting Defendant violated 16 G.C.A. § 7128(a) ("The license plates issued for all vehicles... shall not be covered with plastic or other coverings if thereby the license numbers and letters are not clearly visible"). Id. at 2:21:20pm. The GPD Officers had reasonable suspicion of Defendant's unlawful activity, legally justifying their initial investigative stop of Defendant.

The GPD Officers also had probable cause to believe that Defendant committed a crime, justifying their formal arrest of Defendant. As explained, GPD Officers discovered a concealed firearm in Defendant's vehicle, despite Defendant not possessing concealed-carry status. Id. at 2:32:00pm-2:34:45pm. At that point, GPD Officers had probable cause to believe Defendant had committed a felony, legally justifying their arrest of Defendant.

**III.** **GPD's warrantless search of Defendant's vehicle was constitutional because Defendant consented to the search.**

Like seizures, searches must too be reasonable under the Fourth Amendment. Searches implicate an individual's Fourth Amendment rights when they cover areas in which the

Decision and Order Denying Defendant's Motion to Suppress Evidence
CF0412-22, *People of Guam v. Rico Mantanona*
Page 3 of 5

individual has a "reasonable expectation of privacy". See *Oliver v. U.S.* 466 U.S. 170, at 171 (1984). If the individual does have a reasonable expectation of privacy, police officers must generally obtain a warrant before conducting a valid search. See *People v. Chargualaf*, 2001 Guam 1 ¶ 14. Warrantless searches are otherwise presumed unreasonable. See *Katz v. U.S.*, 389 U.S. 347, 357 (1967).

However, there are several situations where police may conduct a search without first obtaining a warrant. One such exception is voluntary consent by a person who appears to have authority over the location/item searched. See *Chargualaf* at ¶ 14. "Voluntariness is determined from the totality of the circumstances. Factors in determining voluntariness include: 1) whether the defendant was detained and the length of time of the questioning; 2) whether the defendant was threatened or intimated by the police; 3) whether the defendant relied on misrepresentations or promises made by the police; 4) whether the person was in custody or arrest when the consent was given; 5) whether the person was in a public or secluded place; and 6) whether the defendant objected to the search." *Id.* at ¶ 14 (internal citations omitted).

Here, Defendant had a reasonable expectation of privacy in his car, necessitating a warrant for most searches. However, because Defendant consented to Officer Pewtress's searching of his vehicle, no warrant was required so long as the consent was voluntary.

Defendant's consent was clearly voluntary under the totality of the circumstances. As discussed above, Defendant was detained at the time of consent because he was not free to leave the traffic stop. However, no evidence was put forward suggesting Defendant's consent was the product of Officer Pewtress threatening, intimidating, or otherwise making improper promises to him. Although Defendant's Motion suggests he was intimidated into consenting by Officer Pewtress's authority, that does not make his consent involuntary because no coercive or improper behavior induced that intimidation. Furthermore, the consent was given in a public location with foot traffic, suggesting it was given voluntarily. Finally, Defendant made no objections to the search, freely allowing Officers to search both his person and

Decision and Order Denying Defendant's Motion to Suppress Evidence
CF0412-22, *People of Guam v. Rico Mantanona*
Page 4 of 5

vehicle. Therefore, GPD was lawfully allowed to search Defendant's vehicle because he voluntarily consented to the search.

<strong><u>CONCLUSION</u></strong>

For the reasons stated above, the Court **DENIES** Defendant's Motion. The traffic stop and subsequent search of Defendant's vehicle was constitutional, so evidence obtained from it is admissible.

**IT IS SO ORDERED** this March 8, 2024

**HONORABLE ALBERTO C. LAMORENA, III**
**Presiding Judge, Superior Court of Guam**

Decision and Order Denying Defendant's Motion to Suppress Evidence
CF0412-22, *People of Guam v. Rico Mantanona*
Page 5 of 5